IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| AHMER SHAIKH, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil Action No. 1:25-cv-811 (RDA) |
| | ) |
| TODD M. LYONS, et al., | ) |
| | ) |
| Respondents. | ) |

## ORDER

This matter comes before the Court on Petitioner's Emergency *Ex Parte* Motion for Temporary Restraining Order ("TRO"), Dkt. 7, Petitioner's second Emergency *Ex Parte* Motion for Temporary Restraining Order, Dkt. 8, and the Petition, Dkt. 1.[1] Considering Petitioner's Petition, the Motions, the Government's Opposition, Dkt. 10, and the Parties' arguments at the hearing held by the Court on June 23, 2025, the Court DENIES Petitioner's Motions and DISMISSES the Petition as premature for the reasons that follow.

I. BACKGROUND

Petitioner is a native and citizen of Pakistan who has been subject to a final order of removal since March 2021, premised upon his conviction for second degree murder, for which he served a twenty (20) year term of incarceration. *See* Dkt. 1 ¶ 18; *see also* Dkt. No. 1-2 at 53. There is no dispute that Petitioner is removable, that he has a lawful final order of removal entered against him, and that Pakistan is the proper country for his removal. *See id.* In fact, Petitioner's counsel has stated, "If the government has a travel document that is actually for my client[,] then I will

---

[1] Dockets 7 and 8 are collectively referred to as the "TRO Motions."

happily withdraw this matter and had no intention of contesting his removability at that point." Dkt. 7-3, at 1. Counsel also reiterated at the hearing that Petitioner wants to be removed.

In his Petition, Petitioner exclusively challenges his continued detention in ICE custody, alleging that his continued civil immigration detention runs afoul of federal statute (Count I), Dkt. 1 ¶¶ 95-103, and the Due Process Clause, *id.* ¶¶ 104-10 (citing *Zadvydas v. Davis*, 533 U.S. 678 (2001)). In his two subsequent emergency motions seeking temporary restraining orders, however, Petitioner asks for this Court to review, and enjoin, his removal—solely because he disputes the veracity of his travel document to Pakistan. *See* Dkt. 7 at 2; *see also* Dkt. 8 at 2.

## II. LEGAL STANDARD

Petitioner seeks a temporary restraining order—"an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Such a request "involv[es] the exercise of a very far-reaching power to be granted only sparingly and in limited circumstances." *Sarsour v. Trump*, 245 F. Supp. 3d 719, 728 (E.D. Va. 2017). To be eligible for a temporary restraining order, Petitioner must demonstrate each of the following factors by a "clear showing": (1) a likelihood of success on the merits; (2) irreparable harm in the absence of preliminary injunctive relief; (3) the balance of equities between the parties tips in favor of the party seeking such relief; and (4) the public interest favors equitable relief. *Winter*, 555 U.S. at 20, 22. The requirement for showing a clear likelihood of success on the merits "is far stricter than a requirement that the [petitioner] demonstrate only a grave or serious question for litigation." *Sarsour*, 245 F. Supp. 3d at 729 (alterations and quotation marks omitted) (emphasis in original).

A federal court "generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction)." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (internal citation omitted). Federal Rule 12(b)(1) serves as the appropriate vehicle to challenge the court's subject-

matter jurisdiction. *See, e.g.*, *Coulter v. United States*, 256 F. Supp. 2d 484, 486 n.3 (E.D. Va. 2003), *aff'd,* 90 F. App'x 60 (4th Cir. 2004). Although this Court may utilize the allegations contained within the four corners of the plaintiff's complaint as evidence in determining whether it possesses jurisdiction over a matter, it may also consider other evidence outside the pleadings. *See Richmond, Fredericksburg, & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

### III. ANALYSIS

Petitioner's assertions in both his Petition and the TRO Motions raise a number of issues. Because Respondent has raised an issue of the Court's jurisdiction, the Court will first consider the TRO Motions. Then, because the arguments in the TRO Motions implicate the merits of the Petition, the Court will also address the Petition.

A.   The Court Lacks Jurisdiction to Provide the Relief Requested in the TRO Motions

In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, 8 U.S.C. § 1252, *et seq.*, ("IIRIRA"), Congress clearly and explicitly limited judicial review of immigration cases involving orders of removal. Specifically, § 1252(g) provides as follows:

> Except as provided in this section and *notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28*, or any other habeas corpus provision, and sections 1362 and 1651 of such title, no court shall have jurisdiction to hear *any cause or claim* by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or *execute removal orders* against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added). Thus, Congress has made clear that federal courts have no jurisdiction over any claim or cause arising from the Attorney General's decision in executing removal orders. *See Mapoy v. Carroll*, 185 F.3d 224, 229-30 (4th Cir. 1999) ("[W]e interpret . . . 'notwithstanding any other provision of law' to mean that all other jurisdiction-granting statutes, including § 2241, shall be of no effect. . . . In sum, Congress could hardly have been more clear

3

and unequivocal that courts shall not have subject matter jurisdiction over claims arising from the actions of the Attorney General enumerated in § 1252(g) other than jurisdiction that is specifically provided by § 1252.").

Here, § 1252(g) is controlling. This is so because the TRO Motions seek to "temporarily enjoin the removal of Petitioner." In other words, Petitioner seeks review of the execution of a removal order by the Attorney General. Thus, Petitioner's request falls squarely within the terms of § 1252(g), and settled authority in this Circuit makes clear that there is no jurisdiction to adjudicate Petitioner's emergency application for a temporary restraining order. *See Mapoy v. Carroll*, 185 F.3d 224, 229-30 (4th Cir. 1999); *Ashqar v. Hott*, 2019 WL 2712276, at *4 (E.D. Va. June 5, 2019); *Nunez-Garcia v. United States*, 364 F. Supp. 3d 620, 624-25 (W.D. Va. 2019) (holding that courts in the Fourth Circuit have recognized that district courts do not have jurisdiction to stay any order of deportation); *Hutton v. West Virginia*, 2014 WL 856489, at *7, n. 10 (N.D. W.Va. Mar. 5, 2014) ("[T]his Court lacks jurisdiction to grant petitioner's request for an order staying his pending removal proceedings."); *Tobar-Barrera v. Napolitano*, 2010 WL 972557, at *2 (D. Md. Mar. 12, 2010) ("[T]his Court is not authorized to enjoin the removal proceedings currently pending before the Immigration Court."); *Halami v. Ridge*, 270 F. Supp. 2d 763, 766-67 (E.D. Va. 2003) (Ellis, J.) ("§ 1252(g) operates in this context to preclude consideration of plaintiff's request for a temporary stay barring his removal to Afghanistan").

Petitioner has cited no authority suggesting that inaccuracies in the travel documents provided for Petitioner's removal by the Pakistani government creates jurisdiction over Petitioner's TRO Motions or overcomes the jurisdiction-stripping provision in Section 1252(g), and the Court has found no such authority. *See United States v. Talbot*, 22 F. Supp. 3d 419, 423 (M.D. Pa. 2014) ("Defendant argued that he is not a deportable alien under Section 1227(a) because the travel document ICE obtained for his entry into Cameroon upon his deportation from

4

the United States was invalid. . . . [T]he Court has found no authority suggesting that ICE's failure to procure a valid travel document renders an individual 'not deportable' under Section 1227(a)."), *aff'd*, 611 F. App'x 74 (3d Cir. 2015). Accordingly, this Court lacks jurisdiction, and Petitioner's Motions will be denied.[2]

B. The Petition Will Be Dismissed as Premature

The tension between the relief sought in the Petition and the TRO Motions also compels that the Court examine the Petition. Courts are directed, by statute, to examine a petition for habeas corpus and determine whether a petitioner is entitled to relief. 28 U.S.C. §2243. Here, both counts of the Petition raise a single complaint: that Petitioner should not continue to be detained where his removal is unlikely to occur. As the litigation over the TRO Motions suggests, the fundamental premise of the Petition is flawed, because Respondents have promptly acted to remove Petitioner from this country. Although Respondents indicated at the hearing that Petitioner has not yet been removed and so his Petition is not yet fully mooted, the Petition must still be dismissed as premature. *See Dragenice v. Ridge*, 389 F.3d 92, 98 (4th Cir. 2004) (holding that a district court

---

[2] Further confirming that the TRO Motions should be denied is the fact that they seek relief divorced from and contrary to the relief sought in the Petition. The sole challenge raised by the Petition is to Petitioner's immigration detention on the theory that Petitioner is unlikely to be removed. Dkt. 1. By contrast, the TRO Motions challenge the way in which Petitioner's removal is being effectuated. As Respondents correctly note, a claim for injunctive relief must be sufficiently connected to the harms alleged in the Petition. *See, e.g., Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) (holding that a litigant may only seek equitable relief that relates to the harm "alleged in the complaint"); *see also Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (holding that there must be a "sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself," and "[a]bsent that relationship or nexus, the district court lack authority to grant the relief requested"). Thus, even assuming that the Court had jurisdiction to reach the merits of the TRO Motions (which it does not), the TRO Motions would still be denied because an analysis of the *Winter* factors would not require the issuance of emergency relief. Respondents are effectuating Petitioner's removal—the delay of which in combination of his ongoing detention was the chief complaint alleged in the Petition.

may deny a habeas petition as premature); *Liu v. Carter*, 2025 WL 1207089, at *2 (D. Kan. Apr. 25, 2025) (denying habeas petition in part as premature under *Zadvydas*).

As litigation over the TRO Motions reveals and as counsel for Respondents indicated at the hearing, Petitioner is likely to be promptly removed in the near future, perhaps as early as today. *See Zadvydas*, 533 U.S. at 701 ("[O]nce the alien *provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future*, the Government must respond with evidence sufficient to rebut that showing." (emphasis added)); *Guerrero-Sanchez v. Warden*, 905 F.3d 208, 226 n.15 (3d Cir. 2018) (holding that if "the alien's release or removal is imminent then the government is not required to afford the alien a bond hearing"). Indeed, Petitioner specifically stated that, as of June 21, 2025, "it was [Petitioner's] understanding that he was at imminent risk of either being transferred or removed from the United States." Dkt. 7, ¶ 5. And Petitioner represented that, as of June 22, 2025, "Respondents have provided Petitioner a copy of the travel document they intend to use to remove Petitioner" and "indicated through counsel that they intend to execute Petitioner's removal unless an order is in place preventing them from doing so . . . ." Dkt. 8, ¶¶ 4, 6. Petitioner also attached a copy of the travel document at issue, which bears an expiration date of July 10, 2025. Dkt. 8-2, at 1. Thus, Petitioner's own allegations appear to defeat his *Zadvydas* claim.

Moreover, Petitioner has currently only been detained for 52 days—far below the presumptively reasonable limit under *Zadvydas*. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) (describing six-month presumptively reasonable period of detention). Seeking to avoid this conclusion, Petitioner asserts that, for purposes of the *Zadvydas* analysis, his current period of detention should be combined with prior periods of detention; this is incorrect. *See Leybinski v. United States Immigration and Customs Enforcement*, 2013 WL 132544, at *9 (S.D.N.Y. Jan. 8, 2013) ("[T]he assumption underlying this argument—that the detention period runs from the first

6

time an alien is detained and that all detention periods are combined—is unfounded.") (collecting cases), *vacated as moot*, 553 F. App'x 108 (2d Cir. 2014); *Liu v. Carter*, 2025 WL 1207089, at *2 (D. Kan. Apr. 25, 2025) ("Petitioner argues in his petition that because ICE has detained him and released him on multiple occasions in the past, his 90-day removal period and his six-month presumptively-reasonable period have long since expired. As respondents point out, however, and as petitioner does not dispute, courts have agreed that in such circumstance the removal-period clock restarts when an alien subject to a removal order is again detained by ICE."); *Juarez v. Wolf*, 2021 WL 2323436, at *5 (W.D. Wash. May 5, 2021) ("Petitioner has provided no relevant authority to support the proposition that his two distinct periods of custody, separated by over a year during which no removal proceedings were even pending, are properly aggregated for purposes of determining whether Petitioner's detention violates due process. This Court therefore considers only Petitioner's current period of custody."), *report and recommendation adopted*, 2021 WL 2322823 (W.D. Wash. June 7, 2021). Accordingly, Petitioner's current period of detention is presumptively reasonable under *Zadvydas*. Because, however, Petitioner's detention is ongoing and because Petitioner has not yet been removed, the Court will dismiss the Petition as premature.[3]

\*   \*   \*

Accordingly, for the foregoing reasons, it is hereby ORDERED that Petitioner's Emergency *Ex Parte* Motion for Temporary Restraining Order (Dkt. 7) is **DENIED**; and it is

---

[3] Although it appears unlikely on the record before this Court, conceivably, Petitioner could state a valid *Zadvydas* claim in the future, if his removal were to be delayed for some reason and his detention continued.

FURTHER ORDERED that Petitioner's second Emergency *Ex Parte* Motion for Temporary Restraining Order (Dkt. 8) is **DENIED**; and it is

FURTHER ORDERED that the Petition (Dkt. 1) is **DISMISSED WITHOUT PREJUDICE**.

The Clerk of the Court is directed to provide copies of this Order to all counsel of record and to place this matter among the ended causes.

It is SO ORDERED.

Alexandria, Virginia
June 23, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge